UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| FRIENDS OF MOON CREEK, an unincorporated association,<br><br>        Plaintiff,<br><br>vs.<br><br>DIAMOND LAKE IMPROVEMENT, ASSOCIATION, INC. et al,<br><br>        Defendants. | No. CV-13-0396-JLQ<br><br>ORDER DENYING MOTIONS TO DISMISS |

BEFORE THE COURT are the Motions to Dismiss (ECF Nos. 39, 43, & 51) filed on behalf of Defendants Phil Anderson, Director of Washington Department of Fish and Wildlife ("Anderson"), Sharon Sorby, Coordinator of Pend Oreille County Noxious Weed Control Board ("Sorby"), and Defendant Diamond Lake Improvement Association ("DLIA"). The court heard oral argument on the Motions on January 23, 2014. James Schwartz appeared for Anderson. Thomas Luciani participated on behalf of Sorby, and Ryan Poole appeared for DLIA. Plaintiff was represented at the hearing by Mark Wilson. After the hearing, the court allowed the parties to file supplemental briefs. The court has reviewed and considered those submissions.

**I. Standard for Motion to Dismiss**

A motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the pleading. Under Fed.R.Civ.P. 8, a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief. This

ORDER - 1

standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In order to survive a motion to dismiss, a pleading must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

## II. Factual Allegations - Second Amended Complaint

On a motion to dismiss, the court accepts as true well-pleaded factual allegations. Therefore, for the purposes of these Motions, the facts are as pled in the Second Amended Complaint ("SAC" at ECF No. 36). Plaintiff Friends of Moon Creek (an association of property owners living in Moon Creek Estates) claims that Defendants have trespassed and damaged their property. Specifically Plaintiff claims that Defendants have engaged in a project to reduce the water level of Diamond Lake which has involved herbicide applications on Moon Creek, stream dredging, beaver dam destruction, and trapping and killing beavers.

The Defendants are Diamond Lake Improvement Association ("DLIA")(an association of property owners living on or near Diamond Lake), Sharon Sorby, coordinator of the Pend Oreille County Noxious Weed Control Board; and Phil Anderson, Director of the Department of Fish & Wildlife.

Plaintiff contends that Defendants' activities on Moon Creek began in the summer of 2012. Specifically, the first herbicide application complained of is alleged to have occurred on July 6, 2012, when a "propeller driven air boat...was launched into Moon Creek over the strenuous objections of Plaintiff's members" and Plaintiff's members were allegedly "physically threatened by the boat operators". (SAC ¶ 4.3). Plaintiff also alleges it learned in summer 2012, that a Hydraulic Project Approval ("HPA") had been

ORDER - 2

issued to allow for removal of vegetation and installation of beaver tubes. (SAC ¶ 4.7). Plaintiff alleges that in the Fall of 2012 DLIA trespassed on Plaintiff's members' land, that beaver dams were destroyed, and beavers trapped and killed. (SAC ¶ 4.8).

Plaintiff contends that again in September 2013, Diamond Lake Improvement Association ("DLIA") was issued a Hydraulic Project Approval ("HPA") to allow for stream dredging, modification/removal of beaver dams, etc.  On September 23, 2013, DLIA allegedly installed a large culvert through a beaver dam. (SAC ¶ 4.12).  Plaintiff claims that DLIA and the Dept of Fish & Wildlife have advised that additional HPAs will be issued. (SAC ¶ 4.14).

Section 5 of the SAC is entitled "Claims for Relief" and contains eight paragraphs. Therein it appears  Plaintiff alleges under 42 U.S.C. 1983 a Fifth Amendment taking of property. (SAC ¶ 5.2 & 5.3).  Plaintiff contends that Defendant Sorby violated RCW 17.10.170 by issuing a permit to DLIA without proper statutory notice. (SAC ¶ 5.4). Plaintiff alleges that Defendant Anderson of the Department of Fish & Wildlife violated state law by issuing a permit to dredge and destroy beaver dams. (SAC ¶ 5.5 & 5.6).

In sum, Plaintiff contends that Moon Creek is a non-navigable waterway and that the lands underlying the waterway are owned by the individual property owners. Plaintiff contends that Defendants' actions constitute a taking of property without just compensation in violation of the Fifth Amendment.  Plaintiff seeks an injunction enjoining Defendants from engaging in unlawful conduct, entering declaratory judgment, and awarding attorney fees.  Plaintiff no longer seeks compensatory damages in this action against Anderson or Sorby[1].

---

[1]There is an ambiguity as to whether Plaintiff is still seeking compensatory damages against DLIA for trespass. Paragraph 1.2 of the SAC states that Plaintiff "seeks money damages" for injury by DLIA. However, the Prayer for Relief (ECF No. 36, p. 17-18) does not seek compensatory damages.

ORDER - 3

## III. Discussion

A. **Defendant Anderson of Dept. of Fish & Wildlife's Motion to Dismiss** (ECF No. 39) - The Department argues that the case should be dismissed for several reasons: 1) the State is immune from suit under the Eleventh Amendment; 2) under 42 U.S.C. § 1983, Plaintiff must sue an individual, not the state agency or person acting in his official capacity; and 3) Plaintiff fails to state a claim because this was a private project conducted by the DLIA who was not acting on behalf of the state. Plaintiff contends that amendment of the pleadings cured any jurisdictional problems. Plaintiff dropped damage claims against the state entities and "the supervisory individual of each governmental entity was named in his or her official capacity." (ECF No. 45, p. 2). Plaintiff contends that the suit seeks prospective injunctive relief and thus is not barred by 11th Amendment immunity.

"Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits...". *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989). A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Id.* at 71. "As such, it is no different from a suit against the State itself ... We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983." *Id*.

As a general rule, a suit against Defendant Anderson in his official capacity would be barred by Eleventh Amendment immunity. However, Plaintiff argues that the so-called *Ex parte Young*, 209 U.S. 123 (1908) exception applies. "The Eleventh Amendment erects a general bar against federal lawsuits brought against a state. It does not, however, bar actions for prospective declaratory or injunctive relief against state officers in their official capacities for their alleged violations of federal law." *Coalition to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1133-34 (9th Cir. 2012). In

ORDER - 4

determining whether the *Ex parte Young* exception applies, the court looks to the allegations in the complaint. See *Verizon v. Maryland Public Serv. Comm.*, 535 U.S. 635, 645 (2002)("In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.").

In the SAC (ECF No. 36), Plaintiff seeks injunctive and declaratory relief. (SAC p. 16-17). Plaintiff has clearly alleged a threat of future action: "Representatives of defendants DLIA and DFW have advised members of plaintiff, since September 19, 2013, that additional HPAs covering Plaintiff's member's lands, will be issued shortly." (SAC, ¶ 4.14). The SAC also contains the allegation that the "conduct of Defendants individually and collectively has caused, and if allowed to continue will further cause, Plaintiff's affected members to suffer irreparable injuries..." (SAC ¶ 5.7).

The Supreme Court has stated that the *Ex parte Young* analysis "does not include an analysis of the merits of the claim" and that generally an allegation of an ongoing violation of federal law will be sufficient." *Verizon*, 535 U.S. at 646. Anderson argues that there is no ongoing violation to enjoin, because the HPA permit has already been issued. (ECF No. 67, p. 2). Anderson cites no case law in his Supplemental Brief in support of the argument that once a permit has been issued, there can be no ongoing violation of law that is subject to injunctive relief. Anderson further argues that Plaintiff is not seeking to invalidate the HPA that was issued, and the fact that the HPA remains in effect does not matter. The court disagrees with Anderson's arguments.

For the purposes of a motion to dismiss, the court looks to the allegations of the operative pleading, here the SAC. Plaintiff has alleged that additional HPAs will be issued causing them future harm. Anderson had contended in his briefing that there are no pending applications for future permits. (See for example ECF No. 60, p. 2). However, that contention presents a question of fact not appropriate for decision on a

ORDER - 5

motion to dismiss. Plaintiffs have made an allegation of ongoing future harm. Additionally, although the court does not look beyond the pleadings for purposes of a motion to dismiss, the briefing pertaining to the Motion for Preliminary Injunction establishes that the HPA previously issued remains active.

The Department of Fish and Wildlife contends that this court has jurisdiction only if the Director, acting in his official capacity, has threatened to take some future action that may violate federal law. The Department contends that there are no pending applications for future permits, and no current orders requiring any specific performance. However, some of the HPAs have been filed as exhibits to declarations and the permits do not expire until 2016 or 2017. (See for example ECF No. 4-9). Patrick Chapman, an employee of the Dept. of Fish & Wildlife filed a declaration stating that there is an **active** HPA # 127229-03, issued to DLIA for dredging and installation of beaver dam tubes. (ECF No. 39-1, ¶ 2(b)(iii)).

Anderson's final argument that Plaintiff fails to state a claim because the dredging operation was a private undertaking of the DLIA is essentially an argument that the state action component of the Section 1983 claim is lacking. Anderson argues that merely issuing an HPA does not amount to "state action" for purposes of Section 1983 liability. Anderson argues by analogy, that when the State issues a hunting or fishing license to an individual, and that individual trespasses on private land, such trespass is not state action. (ECF No. 67, p. 7). It is true that issuing a license or permit is not necessarily state action for purposes of Section 1983 liability. See *Dezell v. Day Island Yacht Club*, 796 F.2d 324, 328 (9th Cir. 1986)("The Liquor Board did not violate its own regulations as [Plaintiff] argues, but simply issued an appropriate private club license, in accordance with state law. The state agency was not subtly reinforcing private discrimination, as was the case in Moose Lodge."). In *Moose Lodge*, the Supreme Court did find that certain aspects of the Liquor Control Board's regulations could be viewed as in effect placing the sanction of the state on the racially discriminatory policies. *Moose Lodge No.*

ORDER - 6

*107 v. Irvis*, 407 U.S. 163, 173 (1972).  However, as a general matter, it is correct that mere state regulation does not by itself convert a private actor's conduct into state action for purposes of section 1983 liability. See for example *Jackson v. Metropolitan Edison, Co.*, 419 U.S. 345, 350 (9th Cir. 1974); *Mathis v. Pacific Gas & Elec.*, 891 F.2d 1429, 1431 (9th Cir. 1989).

The SAC alleges joint and concerted action among the Defendants.  The SAC plausibly alleges that DLIA was empowered by the HPA to trespass on Plaintiff's members' property, and that the DLIA believed they were acting under authority of the HPA when the alleged trespassing and property damage occurred.  Plaintiff further alleges that they brought the trespassing to the attention of the Department of Fish and Wildlife which "failed and refused" to properly enforce the HPA. (SAC ¶ 4.9).  The Motion to Dismiss (ECF No. 39) is **DENIED**.

    B. **Defendant Sorby (of Weed Control Board) Motion to Dismiss** (ECF No. 43) Sorby argues that she is immune from suit pursuant to state statute: RCW 17.10.134. Sorby contends that she was acting within the scope of her employment, that the statute applies, and therefore she is immune from suit.  The statute on which Defendant Sorby relies, RCW 17.10.134 states in relevant part: "individual members or employees of a county noxious weed control board are personally immune from civil liability for damages arising from actions performed within the scope of their official duties or employment."  The court is not aware of any Washington state case law discussing the scope of this statutory immunity provision.  However, a state statute cannot shield Sorby from a claim of a federal civil rights violation under Section 1983. See *Romstad v. Contra Costa County*, 41 Fed.Appx. 43 (9th Cir. 2002) citing *Wallis v. Spencer*, 202 F.3d 1126, 1144 (9th Cir. 2000)("Immunity under § 1983 is governed by federal law; state law cannot provide immunity from suit for federal civil rights violations.").

The court raised at oral argument whether Sorby intended to argue, as does Anderson, entitlement to Eleventh Amendment immunity.  Sorby did not articulate that

ORDER - 7

argument in her opening brief, nor in the Supplemental Brief (ECF No. 66). The court raised the issue of whether the Pend Oreille County Weed Control Board is an instrumentality of the State for Eleventh Amendment immunity purposes. In *Beentjes v. Placer County Air Pollution Control Dist.*, 397 F.3d 775 (9th Cir. 2005), the Circuit held that a county air pollution control district was not entitled to sovereign immunity under the Eleventh Amendment. The Circuit noted that "while county action is generally state action for purposes of the Fourteenth Amendment, a county defendant is not necessarily a state defendant for purposes of the Eleventh Amendment." *Id.* at 784 n. 10. Sorby has not pursued the Eleventh Amendment argument, and the court does not find she is entitled to immunity from Plaintiff's Section 1983 claims under the Eleventh Amendment or RCW 17.10.134.

Defendant Sorby's Motion to Dismiss is **DENIED**.

C. **Diamond Lake's Motion to Dismiss (ECF No. 51)** - DLIA argues that this action should be dismissed for lack of federal subject matter jurisdiction. DLIA's Motion states that it agrees the other two Defendants should be dismissed, and that would leave only a trespass claim against it, which should not be adjudicated in federal court. As set forth *supra*, the other Defendants have not established that they are entitled to Eleventh Amendment immunity. Further, although DLIA is a private actor, there are allegations that DLIA acted individually and "in concert" with the other Defendants. See SAC ¶ 5.2, 5.3, 5.6-5.8. A private party can be liable under Section 1983 under a "joint action" theory of liability. *Collins v. Womancare*, 878 F.2d 1145 (9th Cir. 1989). "One way to establish joint action is to demonstrate a conspiracy ... Joint action also exists where a private party is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting under color of law for purposes of § 1983 actions." *Id.* at 1154. Plaintiff has not alleged a conspiracy, but it has alleged collective action. Counsel for Sorby, at oral argument, candidly admitted that the Weed Control Board's actions were prompted by the DLIA.

ORDER - 8

Additionally, it was allegedly Sorby who provided notice that the spraying would occur, but DLIA who hired and paid a private contractor to conduct the spraying. The DLIA also obtained the HPA from the Department of Fish & Wildlife.

In its Supplemental Brief (ECF No. 69), DLIA argues that the Pend Oreille County Commissioners had declared an emergency relating to water levels on Diamond Lake in 2012, and that the actions taken by DLIA were to abate a public nuisance. The SAC does not allege that an emergency had been declared. Further, whether DLIA's actions were necessary in response to an emergency situation would present a question of fact. Additionally, DLIA relies on cases such as *Miller v. Schoene*, 276 U.S. 272 (1928) and *In re Property Located at 14255 53rd Ave Tukwila*, 120 Wash.App. 737 (2004), which are easily distinguishable. In *Miller*, the destruction of red cedar trees in order to prevent infection of apple orchards was carried out pursuant to state statute. The court found the state was "under the necessity of making a choice between the preservation of one class of property and that of the other wherever both existed in dangerous proximity". *Id.* at 279. The *Miller* court noted that the legislature had made the choice as to which property was of greater value to the public. In *In re Property*, the Governor had proclaimed an emergency pertaining to the citrus longhorned beetle and authorized the destruction of potential host trees near where the beetles had escaped quarantine. The court held that "the government will not have a constitutional obligation to compensate for property damage, if the damage is necessary to contain or abate a public calamity." 120 Wash.App. at 752. In the case at bar, the SAC does not allege that the rising water level on Diamond Lake was an emergency or public calamity, nor does it allege that the actions taken by Defendants were necessary remedial actions. Thus, DLIA's argument raises factual issues outside the pleadings, which are not considered for the purposes of a motion to dismiss.

DLIA's Motion to Dismiss (ECF No. 51) was based primarily on an argument that the court lacked jurisdiction over Anderson and Sorby. The court has rejected those

ORDER - 9

arguments, and DLIA's Motion to Dismiss is also **DENIED**.

### IV. Conclusion

The Defendants have not established their immunity from suit and have thus failed to establish a lack of subject matter jurisdiction. Under the Supreme Court's *Verizon* decision, the court looks only at the allegations in the complaint to determine if the *Ex parte Young* exception applies. The SAC plausibly alleges an ongoing violation of law, and Plaintiff seeks prospective relief in the form of injunctive and declaratory relief. Defendant Sorby has not established, or even clearly argued, that she is entitled to Eleventh Amendment immunity, and the state statute she relies on does not shield her from federal civil rights claims. Defendant DLIA's Motion rests in part on the other Defendants failed Motions and is also Denied.

**IT IS HEREBY ORDERED**:

1. Defendant Phil Anderson's, the Director of the Department of Fish and Wildlife, Motion to Dismiss (ECF No. 39) is **DENIED**.

2. Defendant Sharon Sorby's, the Coordinator of the Pend Oreille County Noxious Weed Control Board, Motion to Dismiss (ECF No. 43) is **DENIED**.

3. Defendant DLIA's Motion to Dismiss (ECF No. 51) is **DENIED**.

**IT IS SO ORDERED**. The Clerk shall enter this Order and furnish copies to counsel.

Dated this 27th day of February, 2014.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 10