UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| FRIENDS OF MOON CREEK, an unincorporated association,<br><br>Plaintiff,<br><br>vs.<br><br>DIAMOND LAKE IMPROVEMENT, ASSOCIATION, INC. et al,<br><br>Defendants. | No.  CV-13-0396-JLQ<br><br>ORDER GRANTING IN PART and DENYING IN PART MOTION FOR PRELIMINARY   INJUNCTION |

BEFORE THE COURT is Plaintiff Friends of Moon Creek's Motion for Preliminary Injunction (ECF No. 3).  The Motion has been fully briefed and oral argument was heard on January 23, 2014.  The court allowed supplemental briefs to be filed, and has considered those submissions.

## I. Introduction and Procedural History

Plaintiff Friends of Moon Creek ("Plaintiff") filed this action November 21, 2013, and has twice amended its Complaint.  In the Second Amended Complaint ("SAC" at ECF No.36), Plaintiff (an association of property owners living in Moon Creek Estates in Pend Oreille County, Washington) claims that Defendants have trespassed and damaged their property.  Specifically Plaintiff claims that Defendants have engaged in a project to reduce the water level of Diamond Lake which has involved, without the participation or consent of Plaintiff's members, herbicide applications on Moon Creek, stream dredging, beaver dam destruction, and trapping and killing beavers.

ORDER - 1

The Defendants are Diamond Lake Improvement Association ("DLIA")(an association of property owners living on or near Diamond Lake); Sharon Sorby, coordinator of the Pend Oreille County Noxious Weed Control Board ("Sorby"); and Phil Anderson, Director of the Department of Fish & Wildlife ("Anderson").

Plaintiff contends that Defendants' activities on Moon Creek began in the summer of 2012. Specifically, the first herbicide application complained of is alleged to have occurred on July 6, 2012, when a "propeller driven air boat...was launched into Moon Creek over the strenuous objections of Plaintiff's members" and Plaintiff's members were allegedly "physically threatened by the boat operators". (SAC ¶ 4.3). Plaintiff also alleges it learned in the summer 2012, that a Hydraulic Project Approval ("HPA") had been issued to allow for removal of vegetation and installation of beaver tubes in and along Moon Creek (SAC ¶ 4.7). Plaintiff alleges that in the fall of 2012 DLIA trespassed on Plaintiff's members' land and that beaver dams were destroyed and beavers trapped and killed. (SAC ¶ 4.8).

Plaintiff contends that again in September 2013, Diamond Lake Improvement Association ("DLIA") was issued a Hydraulic Project Approval ("HPA") by the Dept. of Fish & Wildlife to allow for stream dredging, modification/removal of beaver dams, etc. On September 23, 2014, DLIA installed a large culvert through a beaver dam. (SAC ¶ 4.12). Plaintiff claims that DLIA and the Dept of Fish & Wildlife have advised that additional HPAs will be issued. (SAC ¶ 4.14).

Section 5 of the SAC is entitled "Claims for Relief" and contains eight paragraphs, but no "counts". It appears that Plaintiff alleges under 42 U.S.C. 1983, a Fifth Amendment taking of property. (SAC ¶ 5.2 & 5.3). Plaintiff contends that Defendant Sorby violated RCW 17.10.170 by issuing a permit to DLIA without proper statutory notice. (SAC ¶ 5.4). Plaintiff alleges that Defendant Anderson of the Department of Fish & Wildlife violated state law by issuing a permit to dredge and destroy beaver dams. Plaintiff alleges trespass in paragraph 5.1, but the paragraph is somewhat vague and no

ORDER - 2

specific Defendants are named. Paragraphs 5.6 to 5.8 simply argue that injunctive and declaratory relief is proper.

In sum, Plaintiff contends that Moon Creek is a non-navigable waterway and that the lands underlying the waterway are owned by the individual property owners adjacent to the Creek. Plaintiff contends that Defendants' actions constitute a taking of property without just compensation in violation of the Fifth Amendment. Plaintiff seeks an injunction prohibiting Defendants from engaging in unlawful conduct, declaratory judgment, and an award of attorney fees.

Each of the three Defendants responded to the SAC by filing a Motion to Dismiss (ECF Nos. 39, 43, & 51). The court heard argument on those Motions on January 23, 2014, and after receiving supplemental briefing, issued an Order denying the Motions on February 27, 2014. (ECF No. 71). The court has issued a temporary injunctive order which remains in effect until March 28, 2014, unless otherwise modified, vacated, or extended by the court. (ECF No. 72). Each of the Defendants has now answered the SAC. Defendant Anderson asserts a crossclaim against Defendant DLIA. (ECF No. 73). Defendant DLIA asserts a counterclaim against Plaintiff Friends of Moon Creek, and asserts third-party claims against the individual members of Friends of Moon Creek. (ECF No. 76).

## II. Discussion

A plaintiff seeking preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 21 (2008). A preliminary injunction is an "extraordinary remedy" not awarded as of right. *Id.* at 23. In *Winter*, the Supreme Court rejected the Ninth Circuit's approach which had allowed for an injunction to be entered on the "possibility" of irreparable harm, and stated such harm must be "likely". As an alternative to demonstrating a likelihood of

ORDER - 3

success on the merits, a movant for a preliminary injunction may establish "serious questions going to the merits, and that the balance of the hardships tips sharply in its favor." *Soda Mountain Wilderness Council v. Bureau of Land Management*, 534 Fed.Appx. 680, 683 (9th Cir. 2013); see also *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011).

The grant of a preliminary injunction is an exercise of judicial discretion. *Sierra On-Line v. Phoenix Software*, 739 F.2d 1415, 1421 (9th Cir. 1984). A preliminary injunction "is not a preliminary adjudication on the merits but rather a device for preserving the status quo and preventing the irreparable loss of rights before judgment." *Id.* at 1422.

**A. Likelihood of Success on the Merits**

Plaintiff has, essentially, two claims: 1) a Constitutional takings claim based on the Fifth Amendment, and 2) a state law trespass claim. In order to succeed on the Constitutional claim, Plaintiff "must establish that the interest at issue was their private property and that it was taken without just compensation." *Washington Legal Foundation v. Legal Foundation of Washington*, 271 F.3d 835, 851 (9th Cir. 2001). Plaintiff argues that if, as Defendant Anderson contends, this was a private project undertaken by DLIA, then it was a taking of private property for a private purpose, and Plaintiff need not establish that it sought compensation. (ECF No. 65, p. 3-4). As to the trespass claim, Plaintiff must show the intentional invasion of its members' property interests. Washington has utilized a four-part test for trespass: 1) an invasion affecting an interest in the exclusive possession of plaintiffs' property; 2) an intentional doing of the act which results in the invasion; 3) reasonable foreseeability that the act done could result in an invasion of plaintiffs' possessory interest, and 4) substantial damage to the property. *Gill v. LDI*, 19 F.Supp.2d 1188, 1197 (W.D. Wash. 1998) citing *Bradley v. American Smelting*, 104 Wash.2d 677, 691 (1985). "The law does not require that the invasion or trespass itself be intentional–it is sufficient that the act resulting in the

1  trespass is intentional." *Id.*  The fourth element of substantial damage is only required

2  when there has been an intangible invasion, such as by airborne pollutants, and not when

3  there has been actual entry on the land by the defendant. *Id.*

4        Plaintiff's argument that it has established a likelihood of success on the merits of

5  it's Fifth Amendment claim is not convincing.  Plaintiff states this element "will almost

6  surely be satisfied: Plaintiff is only asking that Defendants, in essence, be enjoined from

7  violating the law, are only asking that the present status quo ... be protected pending a

8  full hearing on the merits." (ECF No. 3, p. 26).  This argument, itself, does not establish

9  that Plaintiff is likely to prevail on the Constitutional claim under Section 1983 claim.

10  Plaintiff submitted Declarations of nine individuals who own property in the Moon

11  Creek area. (ECF No. 4-12).  These Declarations clearly establish that those owners

12  believe trespass has occurred.

13        Cheryl Ballentine submits that she suffered a headache from the herbicide spray.

14  (ECF No. 4).  Gaylen Warren states that the airboat driver threatened/attempted to run

15  him over. (ECF No. 6).  Mark Moeser states that the beaver pond on his property was

16  destroyed by the Defendants' activity and that this has dramatically decreased his

17  property value. (ECF No. 7).  Doug Anderson operates SpruceWood Farms from his 5

18  acre parcel and sells plants, trees, and shrubs.  He alleges that he sells organic products

19  and they have been contaminated by the herbicide application. (ECF No. 8).   Joe

20  Struthers states he told the DLIA they could not use his property as an access point to the

21  beaver dams and that he has called local police about the trespass, but they have refused

22  to act. (ECF No. 10).   Michele Bowyer alleges that the herbicide application

23  contaminated the well on her property.  She alleges that 8 months after the spraying, she

24  passed out at a casino from dehydration and attributes this to the lack of potable water

25  at her home.  Plaintiff has presented evidence to support a claim of trespass, but it is not

26  clear that Plaintiff has established a likelihood of success on the merits of a Fifth

27  Amendment claim under Section 1983. Plaintiff has not, at this stage, demonstrated that

28  ORDER - 5

1  Defendant Anderson acted jointly with DLIA.  Plaintiff has also not established, at this

2  stage, whether a compensable taking occurred, whether it was for a private or public

3  purpose, or whether Plaintiff's members sought compensation.

4  Defendant Anderson suggests that Plaintiff's claim would fail as a matter of law

5  because the Washington Supreme Court has rejected inverse condemnation claims

6  against municipalities for permitting decisions.  In *Lakey v. Puget Sound Energy*, 176

7  Wash.2d 909, 930 (2013), the Washington Supreme Court stated, "we read the language

8  in Phillips [v. King County, 136 Wash.2d 946 (1998)] as holding that governments have

9  no liability for inverse condemnation for permitting decisions and reject the

10  homeowners' interpretation.".  The State's position is it only issued the HPA, it did not

11  trespass or take the property.  The HPA states by its plain terms: "This Hydraulic Project

12  Approval does not authorize trespass." (ECF No. 4-9, p. 34).  The court need not resolve

13  these arguments at this time.  It is sufficient that Plaintiff, at this stage, has not

14  established a likelihood of success on the merits on the Constitutional claim as to any of

15  the Defendants. As discussed further in Section E, the court does find a likelihood of

16  success on the merits as to the trespass claim.

17  **B.  Irreparable Harm**

18  Plaintiff has alleged trespass and damage to its members' real property in the form

19  of loss of property value, destruction of vegetation, and contamination of water.  The

20  Ninth Circuit has stated: "It is well-established that the loss of an interest in real property

21  constitutes an irreparable injury." *Park Village Tenants Ass'n v. Mortimer Howard Trust,*

22  636 F.3d 1150, 1159 (9th Cir. 2011).  Further, "environmental injury, by its nature can

23  seldom be adequately remedied by money damages and is often permanent or at least of

24  long duration, i.e., irreparable." *Soda Mountain Wilderness Council v. Bureau of Land

25  Management,* 534 Fed.Appx. 680 (9th Cir. 2013).  Although Plaintiff may be able to

26  establish that injury to real property has occurred in the past, the question in the context

27  of the injunction is whether future harm is likely.  "An injunction will not issue if the

28  ORDER – 6

person or entity seeking injunctive relief shows a mere possibility of some remote future injury, or a conjectural or hypothetical injury." *Id*. at 1160. Plaintiff has alleged that members of DLIA and the Department of Fish and Wildlife have advised that additional HPAs will issue. (SAC, ¶ 4.14). This allegation is supported by the declarations submitted. <u>See for example</u> Dec. of Cheryl Ballentine at ECF No. 4, ¶ 14, "DLIA members continue to trespass at will, and to threaten us with more HPAs, which they have been able so far to secure at will." Additionally, the HPAs filed as exhibits do not expire until 2016 or 2017. (<u>See for example</u> ECF No. 4-9). Patrick Chapman, an employee of the Dept. of Fish and Wildlife has filed a declaration stating that there is an active HPA #127229-03, issued to DLIA for dredging and installation of beaver dam tubes. (ECF No. 39-1, ¶2(b)(iii)).

Plaintiff has not definitively established that Defendants will engage in further trespass or take further actions in reliance on the active HPA, but Plaintiff has established more than a remote possibility of future injury. Injury to real property is irreparable harm and this element weighs in favor of Plaintiff and is supported by evidence such as Mr. Moeser's declaration about lost property value, Ms. Bowyer's declaration about well water contamination, and Ms. Ballentine's affidavit concerning continuing trespass.

### C. Balance of the Equities

On one side of this case is Plaintiff, composed of property owners on Moon Creek, who allege trespass and unwanted herbicide application, dredging, and destruction of wildlife. On the other side , is the DLIA, composed of Diamond Lake property owners, who claim to have taken the actions along Moon Creek in order to minimize flooding and preserve their real property. Plaintiff alleges that the actions taken damaged its members' property. DLIA's Third-party Claims (ECF No. 76) allege the Plaintiff's members maintained their property in such a manner as to constitute a nuisance. While both sides allegedly seek to preserve their real property, the equities weigh in favor of

ORDER – 7

Plaintiff, whose members allege their property was physically invaded by DLIA's members and its agents.

**D. Public Interest**

The public interest on both sides must be considered. On Plaintiff's side is the interest in preserving wildlife, not having its water contaminated through herbicide application, and protecting Plaintiff's members right to use and enjoyment of their property. The Ninth Circuit has recognized the "well-established public interest in preserving nature and avoiding irreparable environmental injury." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127,1138 (9th Cir. 2011). DLIA claims its interest is not having flooding that leads to property damage. Anderson and the Department of Fish and Wildlife states its interest is in the protection of fish. The Department argues that it plays a limited role in the permit process and that under RCW § 77.55.021(7)(a), "Protection of fish life is the only ground upon which approval of a permit may be denied or conditioned." The Pend Oreille Noxious Weed Control Board is presumably serving the public interest by eradicating noxious weeds in waterways. The State Legislature has expressed an interest in such activity. See RCW § 17.10.007 ("The purpose of this chapter is to limit economic loss and adverse effects to Washington's agricultural, natural, and human resources due to the presence and spread of noxious weeds on all terrestrial and aquatic areas in the state.").

**E. Conclusion**

Application of the four factor *Winter* test discussed *supra* applies generally to the three Defendants and the two claims. However, the analysis also varies, as discussed *infra*, based on the individual Defendant and on the claim being asserted by Plaintiff. As to Defendant Anderson, and a Constitutional Taking claim, Plaintiff has not established a likelihood of success on the merits to support a preliminary injunction. Anderson would not be liable merely for issuing the HPA. The HPA by its terms did not authorize trespass. There is insufficient evidence at this stage to establish a joint action

ORDER - 8

theory of liability between the State and DLIA. The allegations of the SAC include that the DLIA's permit application contained false statements. Anderson has disclaimed joint action and has filed a cross-claim against DLIA. As to the trespass claim, Plaintiff alleges that "defendants did individually and collectively" enter Plaintiff's members' property as trespassers. (SAC ¶ 5.1). However, there is no specific allegation that Anderson or Dept. of Fish and Wildlife officials physically trespassed on Plaintiff's members' property. Rather, Anderson issued a permit which specifically did not authorize trespass. The court has determined that at this stage Plaintiff is not entitled to a preliminary injunction against Anderson.

As to Defendant Sorby, Plaintiff has not established a likelihood of success on a trespass or Fifth Amendment claim. Sorby was authorized by statute to inspect property for noxious weeds. See RCW 17.10.160 (providing in part that, "Any authorized agent or employee of the county noxious weed control board...where not otherwise proscribed by law may enter upon any property for the purpose of....taking of specimens of weeds, general inspection, and the performance of eradication or control work"). The statute further requires that the official making the inspection "make a reasonable attempt to notify the owner of the property." RCW 17.10.160. Sorby claims she did attempt to provide some notice. As set forth in the Declaration of one of Plaintiff's members, Cheryl Balentine (ECF No. 4), Sorby sent a letter in June 2012. The Declaration of Sorby (ECF No. 44) states that she sent a letter to property owners/tax payers on May 3, 2012, before she first inspected the property. She conducted the inspection by using a canoe. There may be genuine issues concerning the adequacy of the notice. Sorby admits in her Answer (ECF No. 74), that the letter she sent stated that the herbicide application would occur on June 22, 2012, and that it did not occur that day, but rather on July 6, 2012. She states she sent an e-mail on July 5, 2012, attempting to advise of the July 6, 2012, spraying. She further states that her May and June 2012, letters were sent via first class mail, rather than certified mail.

ORDER – 9

1    Sorby did not conduct the herbicide spraying.  There is, however, indication of joint

2    action between DLIA and Sorby.  At oral argument, counsel admitted that members of

3    DLIA approached the Weed Control Board and instigated the inspection.  Then Sorby

4    sent out notice of the herbicide application, but DLIA paid and hired the contractor to

5    make the herbicide application.  The herbicide spray did not occur on the day noticed,

6    and instead was conducted on July 6th, during what could be considered the extended 4th

7    of July weekend.  However, under the current circumstances where no action is presently

8    planned, the court does not find that the public interest weighs in favor of a preliminary

9    injunction.  The State Legislature has declared the importance of controlling noxious

10   weeds.  Further the Legislature has declared a policy against the issuance of court

11   injunctions that could interfere with remediation efforts. See RCW 17.10.180

12   ("PROVIDED, That no stay or injunction shall lie to delay any control work subsequent

13   to notice given pursuant to RCW 17.10.160 or pursuant to an order under RCW

14   17.10.210).  Considering the four factors from *Winter*, the court does not conclude that,

15   at this stage,  Plaintiff is entitled to a preliminary injunction against Sorby.

16       As to DLIA, Plaintiff has produced affidavits supporting the claim that DLIA

17   members committed trespass.  Cheryl Balentine states that an airboat was deployed on

18   her property, without her permission and over her objections, for the purpose of spraying

19   herbicide. (ECF No. 4, ¶ 7).  Mark Moeser asserts that property of his "adjoining and in

20   the beaver ponds is now a destroyed mudflat" due to the activities of DLIA. (ECF No.

21   7, ¶ 6).  Doug Anderson contends that organic products that he sells from his property,

22   including plants, trees, and shrubs were contaminated by the spray. (ECF No. 8).  Joe

23   Struthers contends DLIA members have trespassed on his property. (ECF No. 10).

24       Plaintiff has demonstrated a likelihood of success on the merits of its trespass

25   claim against DLIA.  DLIA members allegedly trespassed in 2012 during the herbicide

26   spray, and to conduct dredging and other activities in 2012 and 2013.  Injury to real

27   property, and environmental injury, is irreparable harm.  The balance of the equities and

28   ORDER - 10

the public interest, based on the current record, tip in favor of Plaintiff's members, who have allegedly had their real property interests invaded, against members of DLIA who seek to avoid flooding on their property.  In balancing the equities, and considering the need for a bond, the court has considered that the Defendants maintain that no future action is planned.  Therefore, Defendants will not be harmed by an injunction.

**IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Preliminary Injunction (ECF No. 3) is **GRANTED IN PART AND DENIED IN PART**.

2. The court's temporary injunctive order (ECF No. 72) is vacated.

3. Defendant DLIA is hereby prohibited from entering on to the real property of Plaintiff's members as described further in paragraph (4) below, and is further prohibited from taking further action involving Plaintiffs' property pursuant to the still active HPA # 127229-03.  Any action pursuant to an HPA that could involve Plaintiff's property shall be taken only after 20 days prior written notice to Plaintiff's members listed in paragraph (4) or upon receiving express written permission from such members, or with the consent of the court.

4. The Plaintiff's Members and their real property are described in the Second Amended Complaint (ECF No. 36, ¶ 3.1) as follows:

A) Cheryl and Robert Balentine, 31 Casey Road, Newport, Washington 99156;

B) George A. Tyler, 221 Casey Road, Newport, Washington 99156;

C) Douglas M. Anderson, 91 Casey Road, Newport, Washington 99156;

D) Tom and Michele Bowyer, 131 Casey Road, Newport, Washington 99156;

E) Joe F. Struthers, 441 Casey Road, Newport, Washington 99156;

F) Mark Moser, 301 Casey Road, Newport, Washington 99156;

G) Gaylan Warren, 202 Casey Court, Newport, Washington 99156.

5. Pursuant to Federal Rule of Civil Procedure 65(d) this Order binds the parties and the parties' officers, agents, servants, employees, and attorneys who have received

ORDER – 11

1    actual notice of the Order.

2        6. Pursuant to Fed.R.Civ.P. 65(c), the court does not find that a posting of security

3    is required. <u>See</u> *Connecticut General Life Ins. Co. v. New Images of Beverly Hills*, 321

4    F.3d 878, 882 (9th Cir. 2003)(stating, "the bond amount may be zero if there is no

5    evidence the party will suffer damages from the injunction.").

6        **IT IS SO ORDERED**.  The Clerk shall enter this Order and furnish copies to

7    counsel.

8        Dated this 27th day of March, 2014.

9                          s/ Justin L. Quackenbush
                        JUSTIN L. QUACKENBUSH
10              SENIOR UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   ORDER - 12