UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| FRIENDS OF MOON CREEK, an unincorporated association, Cheryl and Robert Balentine, George A. and Jane Doe Tyler; Douglas M. and Jane Doe Anderson; Tom and Michele Bowyer Joe F. and Jane Doe Struther; Mark and Jane Doe Moeser; Gaylan and Jane Doe Warren, and Michael and Jane Doe Jeffrey,<br><br>          Plaintiffs,<br><br>          vs.<br><br>DIAMOND LAKE IMPROVEMENT, ASSOCIATION, INC., PHIL ANDERSON, Director Department of Fish & Wildlife, SHARON SORBY, Coordinator Pend Oreille County Noxious Weed Control Board,<br><br>          Defendants/Cross-/Counter-Claimants. | No. CV-13-0396-JLQ<br><br>ORDER RE: MOTIONS FOR SUMMARY JUDGMENT |

      BEFORE THE COURT is Defendant Phil Anderson's, Director of the Washington Department of Fish & Wildlife, Motion for Summary Judgment. (ECF No. 140). Plaintiffs have responded by filing a "Cross-Motion for Summary Judgment" (ECF No. 148). The parties have filed Response and Reply briefs. The Motions were submitted for decision without oral argument. (See Order at ECF No. 163).

**I. Procedural History**

      This action was commenced November 21, 2013. The procedural history has been set forth at length in prior filings and will not be repeated here. There has been extensive motion practice. The court denied Motions to Dismiss by each of the three Defendants. The court granted in part Plaintiffs' Motion for Preliminary Injunction as to Defendant

ORDER - 1

Diamond Lake Improvement Association ("DLIA").  The court has more recently denied Plaintiffs' Motion for Attorney Fees and Anti-SLAAP Motion.  Discovery has been bifurcated into two phases.  Discovery on liability will close on February 17, 2015, and the deadline for filing any further dispositive motion is March 2, 2015. (See Scheduling Order, ECF No. 100).

**II.  Factual Background**

The court has set forth the general factual background in prior Orders. (See for example ECF No. 71, 80, 133, & 139).  For the purpose of adjudicating these Motions, the court looks to the factual statements submitted by the parties and the supporting evidentiary record.  According to Defendant Anderson's Statement of Facts (ECF No. 141), DLIA applied for a Hydraulic Project Approval permit ("HPA") in 2012 for the removal of vegetation from Moon Creek.  DLIA contends that Diamond Lake was flooding and it sought to correct the drainage problem by removing vegetation and altering beaver dams.  The Department of Fish & Wildlife ("Department") issued the HPA in June 2012. The permit was twice revised/reissued in 2013.  Anderson contends the Department did not initiate the project, its role was regulatory, and that DLIA undertook the project for a private purpose.  Anderson states the HPAs did not authorize trespass and DLIA was aware the permits did not authorize trespass.  Anderson further contends that the Department's enforcement officer, Severin Erickson, did respond to reports of trespass and at one point issued written warnings. (ECF No. 141, ¶ 14).

Plaintiffs sets forth their own Statement of Facts in Opposition (ECF No. 149). Plaintiffs admit that in "the winter and spring of 2012, some Diamond Lake residents began to experience higher than normal lake water levels", and that DLIA "began to explore projects which would alleviate the high water levels". (ECF No. 149, ¶ 4). Plaintiffs contend that DLIA sought the assistance of the Department in authorizing the project, and the Department issued an HPA.  Plaintiffs contend the HPA identifies the project location as land which Plaintiffs own or on which they reside.  Plaintiffs contend

ORDER - 2

they were not made aware or given notice of the application for an HPA prior to its issuance in June 2012. Plaintiffs contend the HPA issued in 2012, and twice revised in 2013, "were issued to an entity, DLIA, that owns no property in the areas to be subjected to HPA project activity." (*Id.* at ¶ 13). Plaintiffs contend that George Tyler only consented to DLIA members entering his property for purposes of inspection, but not to carry out projects. Plaintiffs argue that DLIA was responsible for the herbicide application, removing a beaver dam, killing beavers, and dredging Moon Creek "adjacent to Plaintiff's properties." (*Id*. at ¶ 18).

Defendant Anderson filed a "Contrary Statement of Facts" (ECF No. 165) and objections to some of Plaintiffs' asserted facts. Anderson disputes the characterization that DLIA sought assistance from the Department, as opposed to merely applying for an HPA. Anderson disputes that Cheryl Balentine learned of the HPA "one month after it was issued on June 6, 2012," and states that an e-mail from her demonstrates she knew of it no later than June 25, 2012. (ECF No. 165, p. 2). Whether she learned of it 19 days after, or 30 days after its issuance is immaterial. Anderson objects to the assertion by some of the Plaintiffs that the entire area is "now a riparian dead zone" as not being supported by expert opinions or studies. Anderson further takes issue with whether beavers were trapped and killed, arguing that the HPA only authorized beaver tube installation. However, Defendant Anderson admits that the HPA did allow for removal of newly built beaver dams. (ECF No. 165, p. 4). Anderson also objects to characterizations by Plaintiffs that the project was a Department of Fish & Wildlife project, or a Department/DLIA project.

**III. Discussion**

**A. Plaintiffs' Argument for Partial Summary Judgment**

Plaintiffs seek a summary adjudication in their favor finding that Defendant Anderson, of the Washington Department of Fish & Wildlife, "violated rights secured to Plaintiffs by the Due Process clause of the Fifth and Fourteenth Amendments" by

ORDER - 3

entering upon and damaging Plaintiffs' properties without notice and an opportunity to be heard. Plaintiffs further assert that such trespass constituted a taking of property without just compensation. (ECF No. 148, p. 2). Plaintiffs also ask the court to find, as a matter of law, that Defendant DLIA was acting under color of law. (*Id.* at 4).

### B. Defendant's Argument for Summary Judgment

Defendant Anderson's argument is essentially a contention that the alleged violations of Plaintiffs' rights were committed, if at all, by DLIA, and Anderson is not liable. (ECF No. 140). Anderson contends that the Department "did not fund, promote, or support the project," and that its role was "purely regulatory". (ECF No. 140, p. 3). Anderson argues that the Washington state Hydraulic Code cannot itself be a basis for this action because RCW 77.04.012 expressly protects private property rights: "Nothing in this title shall be construed to infringe on the right of a private property owner to control the owner's private property." RCW 77.04.012. (ECF No. 140, p. 5). Anderson contends that "there is no legal obligation to give notice to affected property owners" of an HPA project. (*Id.* at p. 6).

### C. Summary Judgment Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the material facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994). The moving party is entitled to summary judgment when, viewing the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, there are no genuine issues of material fact in dispute. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). While the moving party does not have to disprove matters on which the opponent will bear the burden of proof at trial, they nonetheless bear the burden of producing evidence that negates an essential element of the opposing party's claim and the ultimate burden of persuading the court that no genuine issue of material fact exists. *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, 210 F.3d 1099, 1102 (9th Cir. 2000). When the

ORDER - 4

nonmoving party has the burden of proof at trial, the moving party need only point out that there is an absence of evidence to support the nonmoving party's case. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

Once the moving party has carried its burden, the opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the opposing party must come forward with specific facts showing that there is a genuine issue for trial. *Id*.

Although a summary judgment motion is to be granted with caution, it is not a disfavored remedy: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)(citations and quotations omitted).

### D. State Action Requirement

Section 1983 imposes liability on a "person" who acts "under color of any statute, ordinance, regulation, custom, or usage" of state law to deprive an individual of his/her Constitutional rights. 42 U.S.C. § 1983. Defendant Anderson, the Director of the Washington Department of Fish & Wildlife, is clearly a state actor. At issue, is whether Defendant Diamond Lake Improvement Association ("DLIA"), was acting under color of law in regard to the allegations in this lawsuit.

"Action taken by a private individual may be 'under color of state law' where there is 'significant' state involvement in the action." *Lopez v. Dept. of Health Serv.*, 939 F.2d 881, 883 (9th Cir. 1991). The extent of state involvement in the action is typically a question of fact. *Id*. The Fourteenth Amendment is directed at the States and "can be violated only by conduct that may be fairly characterized as state action." *Lugar v. Edmondson Oil*, 457 U.S. 922 (1982). "Careful adherence to the state action requirement preserves an area of individual freedom by limiting the reach of federal law and federal

ORDER - 5

judicial power. It also avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed." *Id*. at 936. "While the principal that private action is immune from the restrictions of the Fourteenth Amendment is well established and easily stated, the question whether particular conduct is 'private', on the one hand, or 'state action', on the other, frequently admits of no easy answer." *Jackson v. Metropolitan Edison, Co.*, 419 U.S. 345, 349-50 (1974).

A private actor, acting in accord with a state statute or procedure does not necessarily equate to state action. <u>See for example</u> *Hamilton v. Home Sales Inc.*, __Fed.Appx.__ 2014 WL 7251892 (9th Cir. 2014)("bank using a non-judicial foreclosure procedure provided by state law was not a government actor under § 1983); *Robert S. v. Stetson School, Inc.*, 256 F.3d 159 (3rd Cir. 2001)(private school, under State regulation, that "worked in close concert with state and local governments" was not a state actor for liability purposes under § 1983"). Additionally, conclusory allegations that a private actor and state actor conspired are insufficient to state a claim under Section 1983. *Simmons v. Sacramento County Court*, 318 F.3d 1156, 1161 (9th Cir. 2003)("Plaintiff's conclusory allegations that the lawyer was conspiring with state officers to deprive him of due process are insufficient.").

Defendant Diamond Lake Improvement Association ("DLIA") is a private homeowner's association. DLIA's actions are therefore not "state action" or "action under color of law" unless Plaintiffs can establish a theory of liability, such as conspiracy, or joint action. <u>See</u> *Cortez v. County of Alameda*, 580 Fed.Appx. 565 (9th Cir. 2014)("Plaintiffs also allege violations of § 1983 by individual members of the homeowners association but allege no facts to support a conspiracy or any other theory of state action on the part of the homeowner association defendants.").

Under a conspiracy theory of liability, a plaintiff must show "an agreement or meeting of the minds to violate constitutional rights." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002). "To be liable, each participant in the conspiracy need not know the exact

ORDER - 6

details of the plan, but each participant must at least share the common objective of the conspiracy." *Id.* The joint action test asks "whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012). The requirement can be satisfied by proving a conspiracy "or by showing that the private party was a willful participant in joint action with the State or its agents. Ultimately, joint action exists when the state has so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity." *Id.* (Internal citations omitted).

**(1.) Does the Evidence Establish Joint Action?**

Plaintiffs have not asserted a claim for conspiracy, and Plaintiffs do not assert that DLIA is a governmental entity. The Second Amended Complaint pleads that DLIA is a "non-profit corporation presently comprised of some 237 active members" who reside at or near Diamond Lake, and further pleads that DLIA "has no governmental association". (ECF No. 38, ¶ 3.2.1). Therefore, to continue federal court jurisdiction Plaintiffs must present evidence that DLIA acted jointly with the State.

Plaintiffs argue that Defendant Anderson is a state actor (ECF No. 148, p. 8), and the court agrees. On the question of "joint action" between the Department and DLIA, Plaintiffs point to the following: Plaintiffs contend that Jeff Lawlor, a Department biologist, was told by Patrick Chapman, the Department's Regulatory Service Coordinator, that it was not necessary to obtain signatures/consents from all affected property owners, but rather only the applicant. Plaintiffs contend not requiring these signatures is evidence of "irregular assistance" to DLIA. (ECF No. 148, p. 10).

Plaintiffs also contend that the HPAs were improperly issued because they allowed for work on property not owned by the applicant. Plaintiff argues that DLIA would not have engaged in the alleged trespass, if the HPA had not been issued. Plaintiffs argue that issuing the HPA "made DLIA a state actor." (*Id.* at 12). Plaintiffs description of the

ORDER - 7

1  alleged State involvement contains conclusory language. For example, Plaintiffs claim
2  that the HPAs authorized DLIA "to conduct extensive, intrusive, and damaging forays
3  onto Plaintiffs' properties." (ECF No. 148, p. 12). However, it is undisputed that the HPA
4  states on its face: "This Hydraulic Project Approval does not authorize trespass." (ECF
5  No. 144-1). Plaintiffs argue that the Department "was shepherding its Permittee [DLIA]
6  and attempting to insure the completion of the DLIA projects." (ECF No. 148, p. 12).
7  Allegations that one is "shepherding" or "attempting to insure" are mere conclusory
8  allegations, devoid of specific facts.

9  Plaintiffs also rely on e-mail communications between the Department and DLIA,
10 which they characterize as e-mails in which DLIA "indicated it had obtained or would
11 obtain the necessary permission from affected landowners." (ECF No. 148, p. 14). A
12 reasonable inference from such e-mails, contrary to Plaintiffs assertion of "joint action,"
13 would be that DLIA mislead the Department as to whether it had obtained permission. In
14 fact, Anderson has stated in a Cross-claim that DLIA "misrepresented statements" in its
15 application. (ECF No. 73, ¶ 8.3). DLIA generally denies the Cross-claim allegations.
16 (ECF No. 79). Further, an internal Department e-mail of June 28, 2013, states that, "Dan
17 [Holman] is adamant that no trespassing is taking place by DLIA members." (ECF No.
18 143). There is also a May 25, 2012 e-mail from Jeff Taylor of DLIA which states that he
19 obtained "written permission from George Tyler to access the pond through his property."
20 (*Id*.).

21 Department biologist, Jeffrey Lawlor, avers that he processed the HPA application
22 submitted by DLIA in 2012. (ECF No. 144). Lawlor told the applicant that the permit did
23 not authorize trespass on private land. (*Id.* at ¶ 4). Lawlor avers that he was "repeatedly
24 assured" by DLIA that DLIA "had or would have permission from any affected
25 landowner." (*Id*. at ¶ 5). In a June 5, 2012 e-mail from Lawlor to Jeff Taylor Lawlor
26 informed: "It will be up to you to ensure you have the proper authorizations to access the
27 work area. There is standard language in the HPA that clearly states that the HPA does not

28 ORDER - 8

authorize trespass." (ECF No. 144-5). Jeff Taylor responded to the e-mail on June 6, 2012, and stated, in part, "I understand the trespass issue". (ECF No. 144-6).

In an e-mail of January 3, 2013, Dan Holman, of DLIA, sent an e-mail to Jeff Lawlor of the Department informing him that they "did get permission to clean out the ditch", and that DLIA "just received permission from the land owner to the south, that actually owns majority of property under the beaver dam, to install beaver tube(s)". (ECF No. 144-8).

Similarly, the Joint Aquatic Resource Application (JARPA) for the Moon Creek project (ECF No. 144-4), submitted by Jeff Taylor of DLIA, was signed by George Tyler as the property owner allowing access. Mr. Tyler admits signing the document. (Dec. Of George Tyler, ECF No. 152). Plaintiffs contend that only requiring the signature of one landowner was insufficient, and is evidence the Department was assisting DLIA. The documents submitted show DLIA made numerous representations to the Department that it was obtaining the necessary permission of landowners.

The evidence of record also includes Plaintiffs' Interrogatory Response stating that Department employee, Jeff Lawlor, was seen in the company of two DLIA members trespassing on Joe Struthers' property in January 2013. (ECF No. 142, p. 11). Plaintiffs also state they "assumed" DLIA was an agent or contractor of the Department. (*Id.* at p. 12). A statement of assumption is not a fact sufficient to defeat summary judgment. Plaintiffs also state in Interrogatory Responses that on at least five occasions between July 2012 and October 2013, they contacted Department employees to complain about trespass occurring on their properties. (ECF No. 142, p. 12).

Severin Erickson, a Fish & Wildlife Department Police Officer, has filed a Declaration (ECF No. 146) that he investigated a complaint of trespass made by Plaintiff Cheryl Balentine in April 2012, and issued a citation to Terry Konkright and Robert Tully for Unlawful Hydraulic Project Activities and for Criminal Trespass, Second Degree. Those citations are of record at ECF No. 146, Ex. 1.

ORDER - 9

Cheryl Balentine has filed a Declaration stating that on September 7, 2013, members of DLIA arrived on her property, without advance notice, with shovels, chain saws, and other tools and began dredging in the creek. She claims the DLIA members told her they had a Department permit. (ECF No. 150). She also claims that the Department has been unresponsive to her concerns about destruction of fish and wildlife in the stream. (*Id*.).

There is no emphatic direct evidence of joint action. Rather, Plaintiffs rely on the manner in which the HPA was processed, allegedly without the proper permission from landowners, and the fact that the response by the Department to their trespassing complaints was unsatisfactory. There is the Interrogatory Response stating that in January 2013, a Department employee was seen with two DLIA members trespassing on a Plaintiff's property near the beaver dam. There are also the e-mail communications between DLIA and Department members, which could be construed as routine communications, but which Plaintiffs allege are evidence of joint action to commit an unconstitutional deprivation of property.

**(E.) DLIA Responsive Brief**

The pending Motions before the court are brought by Defendant Anderson and Plaintiffs. Defendant Sorby has filed no briefing, and as Plaintiffs' "cross-Motion" was filed as a response to Anderson's Motion, arguably those are the only parties with an interest in the pending Motions. However, Plaintiffs' Motion and their proposed Order (ECF No. 148-1), seek a finding that DLIA was acting under color of law. Therefore DLIA reasonably filed a Response (ECF No. 168). The Response begins by addressing the state action question, and asserts there are "issues of fact that are clearly in dispute." (ECF No. 168, p. 2). Genuine disputes of material fact preclude summary judgment. The Response then continues to raise a series of other issues such as: 1) the court does not have subject matter jurisdiction; 2) the claims are not ripe; 3) argues that there was an extant emergency affecting the public; 4) standing; and 5) estoppel. DLIA argues that there has

ORDER - 10

been no taking under the Fifth Amendment and that Plaintiffs' claims should be dismissed. (ECF No. 168, p. 10). However, DLIA has no motion pending before the court, and many of the issues briefed are not at issue in the instant Motions. Further, some of the issues DLIA attempts to raise were previously addressed in the Court's "Order Denying Motions to Dismiss" (ECF No. 71). The court therefore does not address the issues raised in DLIA's Response, other than as they pertain to the question of action under color of law.

## IV. Conclusion

Defendant Anderson's Motion for Summary Judgment rests largely on the argument that it did not act jointly with DLIA. Anderson contends this was DLIA's private project and the Department merely issued a permit. Plaintiff seeks a determination that DLIA, a private homeowner's association, did act jointly with the Department such as to expose it to liability under Section 1983. As discussed *supra*, questions of fact are presented. Plaintiffs' briefing nearly concedes, despite requesting summary judgment, that this determination involves a question of fact. Plaintiffs state: "The sifting of facts and weighing of circumstances discloses further nonobvious involvement of the State." (ECF No. 148, p. 12). Plaintiffs' phrasing comes from case law: "only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." *Collins v. Womancare*, 878 F.2d 1145, 1154 (9th Cir. 1989) citing *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 722 (1961). This does not mean that such issue may never be resolved at the summary judgment stage. There may be instances in which a summary judgment factual record is largely undisputed. However, the court does not resolve issues of disputed fact or weigh the evidence when considering a summary judgment motion. Both Plaintiffs and DLIA have filed briefs acknowledging that factual issues are presented. Neither Plaintiffs nor Defendant Anderson are entitled to summary judgment.

**IT IS HEREBY ORDERED**:

1. Defendant Anderson's Motion for Summary Judgment (ECF No. 140) is **DENIED**.

2. Plaintiffs' Cross-Motion for Summary Judgment (ECF No. 148) is **DENIED**.

**IT IS SO ORDERED**. The Clerk shall enter this Order and furnish copies to counsel.

Dated this 5th day of February, 2015.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 12