1

2

3                    UNITED STATES DISTRICT COURT

4                    EASTERN DISTRICT OF WASHINGTON

5  FRIENDS OF MOON CREEK, an            )
   unincorporated association, Cheryl    ) No.  CV-13-0396-JLQ
6  and Robert Balentine, George A. and   )
   Jane Doe Tyler; Douglas M. and Jane   ) ORDER RE: MOTIONS
7  Doe Anderson; Tom and Michele Bowyer  ) FOR SUMMARY JUDGMENT
   Joe F. and Jane Doe Struther; Mark and )         and
8  Jane Doe Moeser; Gaylan and Jane Doe  ) SETTING SCHEDULING
   Warren, and Michael and Jane Doe      ) CONFERENCE
9  Jeffrey,                              )
                                         )
10                   Plaintiffs,         )
                                         )
11          vs.                          )
                                         )
12 DIAMOND LAKE IMPROVEMENT,             )
   ASSOCIATION, INC., PHIL ANDERSON,     )
13 Director Department of Fish & Wildlife, )
   SHARON SORBY, Coordinator Pend        )
14 Oreille County Noxious Weed Control    )
   Board,                                )
15                                        )
            Defendants/Cross-/Counter-Claimants. )
16 _____ )

17         BEFORE THE COURT is Defendant Sharon Sorby's, Coordinator of the Pend

18 Oreille County Noxious Weed Control Board, Motion for Summary Judgment and

19 Plaintiffs' Motion for Summary Judgment against Sorby. (ECF No. 175 & 180).

20 Defendant Diamond Lake Improvement Association ("DLIA") joins in Sorby's Motion,

21 but has not filed its own separate motion for summary judgment.  DLIA has filed a

22 Motion to Dismiss (ECF No. 185), which the court addresses via separate order.  The

23 parties have filed Response and Reply briefs, and the Motions were  submitted for

24 decision without oral argument.

25         Sorby argues that she is entitled to summary judgment on Plaintiffs' takings claim

26 under Section 1983 because, she claims, Plaintiffs have no protected property interest in

27 noxious weeds. (ECF No. 175, p. 7).  Sorby also argues that the notice she provided

28 ORDER - 1

satisfied due process.  Sorby further contends she is entitled to summary judgment on Plaintiffs' claims of trespass and non-compliance with RCW § 17.10.170.  Sorby argues that she had statutory authority, under Washington state law, to inspect for the presence of noxious weeds on private property and cannot be held liable for trespass.  Lastly, Sorby argues that she was not required to send notice via certified mail under RCW § 17.10.170 as she was not proceeding under that section.  Sorby contends that section applies to "enforcement actions" where the landowner must either remove the noxious weeds at his/her own cost, or reimburse the Weed Control Board for removal.

Plaintiffs' Motion seeks a summary judgment determination that Sorby's actions violated the Due Process Clause and constituted a Taking without just compensation. Plaintiffs argue that the notice given was deficient - - it did not correctly describe the time, method of application, herbicide to be applied, or provide notice of how to object. Plaintiffs also argue that notice by certified mail was required under RCW § 17.10.170. Plaintiffs further seek a determination that Defendant DLIA acted under color of law.

## I. Procedural History

This action was commenced November 21, 2013.  The procedural history has been set forth at length in prior filings and will not be repeated here.  There has been extensive motion practice.  The court denied Motions to Dismiss by each of the three Defendants.   The court granted in part Plaintiffs' Motion for Preliminary Injunction as to Defendant Diamond Lake Improvement Association ("DLIA").  The court denied Plaintiffs' Motion for Attorney Fees and Anti-SLAAP Motion.  The court also denied cross-Motions for Summary Judgment between Plaintiffs and Defendant Anderson. (See Order of February 5, 2015 at ECF No. 172).  Discovery has been bifurcated into two phases, and discovery on liability closed on February 17, 2015.  The dispositive motion deadline was March 2, 2015. (See Scheduling Order, ECF No. 100).

ORDER - 2

## II. Factual Background

The court has set forth the general factual background in prior Orders. (See for example ECF No. 71, 80, 133, & 139). As the pending Motions pertain primarily to the actions of Defendant Sorby and the Pend Oreille County Noxious Weed Control Board (hereafter "Weed Control Board"), this factual recitation will focus on the actions of Sorby in 2012. On May 3, 2012, Sorby and the Weed Control Board were issued a "Letter of Limited Agent Status by the Washington State Department of Agriculture." (Sorby's St. of Facts at ECF No. 176, ¶ 7). This letter was pursuant to the Washington State Department of Ecology's Aquatic Noxious Weed Management General Permit ("General Permit"). (Id. at ¶ 2-3). The General Permit required "pre-application notification to private residents immediately adjacent to the area to be treated." (ECF No. 177, p. 2).

Sorby contends that on May 3, 2012, she sent a letter to Robert Balentine, Shirley Parnell, Douglas Anderson, Michael Jeffery, Christian Reisenauer, Jesus and Esther Aguilera, James Chermak, George Tyler, Mark Moeser, Tyler Turner, Dennis Fiorucci, and Tom Weise notifying them of her intent to conduct an inspection of the Moon Creek area for Reed Canarygrass. (Id. at ¶ 9). Five of these named individuals are Plaintiffs in this action. Some of the Plaintiffs deny receiving the May 3, 2012 letter. Sorby admits she did not send the letter to Plaintiffs Gaylan and Jane Doe Warren, or Joe F. and Jane Doe Struthers, contending that they were not adjacent to the application area. Sorby contends she did not mail notice to Tom and Michele Bowyer, who were leasing property from Michael Jeffery, but that she did notify Mr. Jeffery. Although several of the Plaintiffs dispute receiving the letter, Plaintiffs also contend the May 3, 2012 notice is not material. See ECF No. 192, p. 5 ("[May 3rd] notice is not paramount to this proceeding.").

Sorby only received a response to the May 3, 2012 letter from two individuals: Tom Weise and Dennis Fiorucci. Neither of those individuals are Plaintiffs herein.

ORDER - 3

According to Sorby, both Mr. Weise and Mr. Fiorucci conveyed that they had no objection to the inspection or intended herbicide application. (*Id.* at ¶¶ 13-14). Sorby conducted the inspection, and did observe Reed Canarygrass. (*Id.* at ¶ 15). On June 12, 2012, Sorby sent a letter to the same property owners listed above. The June 12th letter notified the recipient of a herbicide application on Moon Creek "to be made by back-pack sprayer to the reed canarygrass using an herbicide with the active ingredient, glyphosate." (ECF No. 177-4). It further stated the anticipated date of the herbicide spraying was the week of June 18, 2012, likely Friday the 22nd, "providing the wind is within tolerances to prevent off-site drift." (*Id.*). The letter concluded with: "If you have any questions, please call the Weed Board. We are undertaking this project to improve the water flow conditions along the specified shorelines." *Id.*

Sorby states that the spray did not occur via backpack, as originally planned, due to the growth of the Reed Canarygrass and decrease in level of waterway. She states that DLIA offered to hire professional applicators. (ECF No. 177, ¶ 10). No herbicide spraying was done on Moon Creek in June 2012. On July 5, 2012, at approximately 4:15 p.m., Sorby sent an e-mail to some of the Plaintiffs stating that the application would occur the next morning. (Pltfs St. of Facts at ECF No. 181). The herbicide was applied via airboat on July 6, 2012, by Lakeland Restoration Services. DLIA paid approximately $3,488 for the herbicide application.

## III. Discussion

### A. Summary Judgment Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the material facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994). The moving party is entitled to summary judgment when, viewing the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, there are no genuine issues of material fact in dispute. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252

(1986). While the moving party does not have to disprove matters on which the opponent will bear the burden of proof at trial, they nonetheless bear the burden of producing evidence that negates an essential element of the opposing party's claim and the ultimate burden of persuading the court that no genuine issue of material fact exists. *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, 210 F.3d 1099, 1102 (9th Cir. 2000). When the nonmoving party has the burden of proof at trial, the moving party need only point out that there is an absence of evidence to support the nonmoving party's case. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

Once the moving party has carried its burden, the opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the opposing party must come forward with specific facts showing that there is a genuine issue for trial. *Id.*

Although a summary judgment motion is to be granted with caution, it is not a disfavored remedy: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)(citations and quotations omitted).

## B.  The Federal Claims

Plaintiffs' Takings and Due Process claims are brought pursuant to 42 U.S.C. § 1983. Section 1983 imposes liability on a "person" who acts "under color of any statute, ordinance, regulation, custom, or usage" of state law to deprive an individual of his/her Constitutional rights. 42 U.S.C. § 1983. "Action taken by a private individual may be 'under color of state law' where there is 'significant' state involvement in the action." *Lopez v. Dept. of Health Serv.*, 939 F.2d 881, 883 (9th Cir. 1991). The extent of state involvement in the action is typically a question of fact. *Id*. The Fourteenth Amendment is directed at the states and "can be violated only by conduct that may be fairly

characterized as state action." *Lugar v. Edmondson Oil*, 457 U.S. 922 (1982).  "Careful adherence to the state action requirement preserves an area of individual freedom by limiting the reach of federal law and federal judicial power.  It also avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed." *Id*. at 936.  "While the principle that private action is immune from the restrictions of the Fourteenth Amendment is well established and easily stated, the question whether particular conduct is 'private', on the one hand, or 'state action', on the other, frequently admits of no easy answer." *Jackson v. Metropolitan Edison, Co.*, 419 U.S. 345, 349-50 (1974).

Defendant Diamond Lake Improvement Association ("DLIA") is a private homeowner's association.  DLIA's actions are therefore not "state action" or "action under color of law" unless Plaintiffs can establish a theory of liability, such as conspiracy, or joint action.  See *Cortez v. County of Alameda*, 580 Fed.Appx. 565 (9th Cir. 2014)("Plaintiffs also allege violations of § 1983 by individual members of the homeowners association but allege no facts to support a conspiracy or any other theory of state action on the part of the homeowner association defendants.").

The joint action test asks "whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Tsao v. Desert Palace, Inc*., 698 F.3d 1128, 1140 (9th Cir. 2012).  The requirement can be satisfied by proving a conspiracy "or by showing that the private party was a willful participant in joint action with the State or its agents.  Ultimately, joint action exists when the state has so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity." *Id.* (Internal citations omitted).

**(1) Does the Evidence Establish Joint Action?**

Plaintiffs have not asserted a claim for conspiracy, and Plaintiffs do not assert that DLIA is a governmental entity.  The Second Amended Complaint pleads that DLIA is a

"non-profit corporation presently comprised of some 237 active members" who reside at or near Diamond Lake, and further pleads that DLIA "has no governmental association". (ECF No. 38, ¶ 3.2.1). Therefore, Plaintiffs must present evidence that DLIA acted jointly with a state actor.

Sorby is the Coordinator of the Pend Oreille County Noxious Weed Control Board. Defendant Sorby is an employee of Pend Oreille County. (ECF No. 177, ¶ 2). The Defendants appear to concede that Sorby is a state actor, but DLIA claims there is no evidence of joint action between it and a state actor. To the contrary, Sorby's May 3, 2012 letter stated: "I am writing to let you know the Weed Board and Diamond Lake Improvement Association are embarking on a cooperative project to remove reed canarygrass, Phalaris arundinacea, a noxious weed, from the banks of Moon Creek where it flows through your property." (ECF No. 177-3). Further, relatively early in this lawsuit, at the hearing on the Motion for Preliminary Injunction and Motions to Dismiss in January 2014, the court asked counsel for Sorby whether the court's perception was correct that the Weed Board's action was "triggered" by DLIA. Counsel for Sorby candidly admitted that the court was correct, that DLIA had engineering studies and brought them to attention of the Weed Board.    (Transcript at ECF No. 204, p. 20).    This was memorialized in a subsequent Order, where this court stated that counsel for Sorby had "admitted that the Weed Control Board's actions were prompted by the DLIA." (ECF No. 71, p. 8).

It appears clear that DLIA first approached the Weed Control Board concerning the presence of noxious weeds in Moon Creek and the concern that such was contributing to higher water levels on Diamond Lake. Sorby then sent out a letter stating that the Weed Control Board was undertaking a "cooperative project" with DLIA. Sorby thereafter inspected Moon Creek via canoe to confirm the presence of the reed canarygrass. It appears that DLIA then chose Lakeland Restoration Services to apply the herbicide, and paid for the cost of the subsequent herbicide application.

ORDER - 7

Sorby states that prior to the July 6, 2012 herbicide application at issue in this case, the last time the Weed Control Board had authorized a herbicide treatment for reed canarygrass was nearly 4 years prior, in the Fall of 2008. (ECF No. 182-1).  Sorby had initially recommended application by backpack sprayer, and her letter of June 12, 2012 stated that would be the application method.  Ultimately, Lakeland Restoration Services, the commercial applicator hired by DLIA, conducted the spray using an airboat.  Sorby's Interrogatory Responses state she does not know how Lakeland Restoration Services was chosen.

Sorby has also stated that to her knowledge it is unprecedented to have a third-party pay for the herbicide application: "Sharon Sorby is not aware of payment for an enforcement herbicide application by any entity other then Pend Oreille County or the affected landowner." (ECF No.  182-1, ROG #11).  In this case, neither the County or the affected landowners paid.  DLIA paid for the herbicide application.

The court finds that Plaintiffs have presented sufficient evidence of joint action between Sorby and DLIA to make DLIA a state actor for purposes of the herbicide application in 2012.

(2) **The Taking Claim**

Sorby seeks to frame the issue as only whether the destruction of noxious weeds constitutes a constitutional taking.  Sorby's argument ignores other evidence of record. For example, Mark Moeser has stated that the destruction of the beaver dam on his property dramatically decreased his property value (ECF No. 7); Doug Anderson has declared that he operates a farming operation on his property, sells organic products, and that the herbicide contaminated those products (ECF No. 8); and Michele Bowyer has stated that the herbicide contaminated the well on her property.

At the hearing on the motions for preliminary injunction, Plaintiffs stated that they had not sought compensation in state court and that in this federal action they were only seeking declaratory and injunctive relief on the federal claims.  Plaintiffs' counsel stated

ORDER - 8

they would be seeking damages in the state proceedings.  Plaintiffs' counsel stated they had provided notice of damage claims to the Department of Fish & Wildlife and the Weed Control Board and that those damages proceedings would proceed in other forums. (Transcript, ECF No. 204, p. 44-45)**.**  The Supreme Court has stated that the Fifth Amendment "does not proscribe the taking of property; it proscribes the **taking without just compensation**." *Sinaloa Lake Owners Assoc. v. City of Simi Valley*, 864 F.2d 1475, 1479 (9th Cir. 1989)(emphasis added) <u>citing</u> *Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194 (1985).   A plaintiff is required to first seek compensation from the state if adequate procedures are available: "Plaintiffs need not bring a state court action when it would be futile under existing state law." *Sinaloa Lake*, 864 F.2d at 1479.  Plaintiffs have not established that recourse to state proceedings would be futile, and in fact, counsel's statement that they intend to pursue damages in state court would indicate that procedures are available.  Plaintiffs' Takings claim is not ripe. Accordingly, the Takings claim shall be dismissed without prejudice.

### **(3) Due Process and Sufficiency of Notice**

Plaintiffs' Due Process claim is not foreclosed by their failure to seek compensation in state proceedings.  In *Sinaloa Lake*, the Ninth Circuit stated: "we reject defendant's contention that the second prong of *Williamson County* requires exhaustion of available state compensation remedies before plaintiffs may pursue their due process claim in federal court." 864 F.2d at 1481.  The court held that the requirement to first seek state compensation "has no application to other types of constitutional claims, even where those claims arise out of facts that also give rise to a taking claim." *Id.*

"At the core of the due process clause is the right to notice and a hearing at a meaningful time and in a meaningful manner." *Id*. at 1482.  Generally, "due process of law requires an opportunity for some kind of hearing prior to the deprivation of a significant property interest." *Id*.  However, the government can take summary action in the event of an emergency, designed to protect the public health, safety, and general welfare without

ORDER - 9

violating due process. *Id.*

Sorby contends that RCW 17.10.160 required that she "make a reasonable attempt to notify the owner of the property as to the purpose and need for the entry," prior to her inspection of the property for noxious weeds. She contends that she did so by sending the letter of May 3, 2012. She then sent a second notice, dated June 12, 2012 informing of "small herbicide applications below the ordinary high water mark, along the shore lines of Moon Creek to manage the reed canarygrass". (ECF No. 177-4). The June 12, 2012 letter stated the application "will be made by back-pack sprayer," and the anticipated date of treatment "is the week of June 18, 2012, specifically Friday the 22nd". The letter concluded with: "If you have any questions, please call the Weed Board. We are undertaking this project to improve water flow conditions along the specified shorelines." (*Id.*).

Sorby contends that after consulting a parcel map, she sent the May and June 2012 letters to the owner/tax payers of the properties bordering Moon Creek. Sorby states that none of the letters were returned as undeliverable, and that at deposition Plaintiffs confirmed the addresses Sorby had obtained were correct. Sorby contends this is indisputable evidence that the notices were received. It is not. Plaintiff Cheryl Balentine has filed a Declaration stating that she did not receive the May 3, 2012 letter, but admitted she did receive the June 12, 2012 letter. (ECF No. 4, ¶ 5). Plaintiff Gaylan Warren states that he received no notice from the Weed Control Board, although he also admits that his property does not directly abut Moon Creek. (ECF No. 6). Plaintiff Mark Moeser declares that he "was only informed, by the Weed Board, that some unidentified stretch of Moon Creek was to be sprayed, giving an incorrect date." (ECF No. 7). Plaintiff George Tyler avers that he "never received any notice that this spraying was to take place, and, if I could have prevented it, I would have." (ECF No. 9, ¶ 4). Plaintiffs Michele and Tom Bowyer also state that they received no notice of the spraying. (ECF No. 11 & 12).

There is a genuine issue of fact as to whether several of the Plaintiffs received the

ORDER - 10

letters of May 3, 2012 and June 12, 2012.  Plaintiffs also challenge the adequacy of the notice in that the June 12, 2012 letter gave an incorrect date for the application, incorrect method of application, and was not addressed to specific owners (rather "Landowners and Residence Along Moon Creek") and thus did not specifically identify the area to be sprayed.  Plaintiffs further argue that RCW 17.10.170 required that the notice be sent by certified mail.  That statute provides in pertinent part:

> (1) Whenever the county noxious weed board finds that noxious weeds are present on any parcel of land, and that the owner is not taking prompt and sufficient action to control the noxious weeds, pursuant to the provisions of RCW 17.10.140, it shall notify the owner that a violation of the chapter exists.  The notice shall be in writing and sent by certified mail, and shall identify the noxious weeds found to be present, order prompt control action, and specify a time, of at least ten days from issuance of the notice, within which the prescribed action must be taken.  Upon deposit of the certified letter of notice, the noxious weed control authority shall make an affidavit of mailing that is prima facie evidence that proper notice was given.

In this case, Sorby admits that notice was not sent by certified mail, and no affidavit of mailing is contained in the summary judgment record.  Sorby contends certified mail notice was not required because this was not an "enforcement action" in which the landowners would have to pay for the remediation efforts.  Paragraph 5.4 of the Second Amended Complaint alleges that Sorby allowed DLIA to spray herbicide without required statutory notice under RCW 17.10.170. (ECF No. 36).  Sorby admits that she did not comply with RCW 17.10.170, and thus the issue is whether she was required to so comply.

By its plain terms, RCW 17.10.170 applies "whenever the county noxious weed control board finds that noxious weeds are present on any parcel of land, and that the owner is not taking prompt and sufficient action to control the weeds...".  Sorby had inspected the property at issue and asserts she found noxious weeds. (ECF No. 177, ¶ 7)("I inspected the area using a canoe and determined the Reed Canarygrass I observed should be eradicated...").  The statute further provides that if the "owner does not take action to control the noxious weeds in accordance with the notice, the county board may control

ORDER - 11

them, or cause their being controlled, at the expense of the owner." RCW 17.10.170(3). It appears Sorby's contention is that no certified mail notice was required because a third-party (DLIA) was going to pay for the herbicide application. The statute does not directly contemplate that course of action. The June 12, 2012 notice was sent 10 days before the contemplated action, but was not sent via certified mail. The spray did not occur on June 22nd, and the only notice of the July 6, 2012 spray was via e-mail sent on July 5, 2012.

Sorby has not complied with the certified mail notice and 10-day advance notice requirement of RCW 17.10.170. Sorby's contention that this was not an "enforcement" action and thus compliance is not required is unavailing. In objection to Plaintiffs' Interrogatories, specifically the use by Plaintiffs of the phrase "involuntary herbicide application," Sorby stated: "RCW 17.10.170 allows a county weed control board to control noxious weeds on private land without the owner's consent...". (ECF No. 182-1). In response to Interrogatory 11 concerning payment by a third-party, Sorby responded: "Sharon Sorby is not aware of payment for an enforcement herbicide application by any entity other than Pend Oreille County of the affected landowner." (ECF No. 182-1). The statute gives the landowner an option when notified of noxious weeds: 1) remedy the problem at the landowner's expense; or 2) allow the County to take control action and reimburse the County. A landowner may presumably choose to take control measures in order to maintain some measure of oversight on the remediation efforts. Plaintiffs herein were not afforded that option.

**C. State Law Statutory Claim and Trespassing**

Defendant Sorby is correct that Washington State statutes allow for her to enter on to private property and inspect for the presence of noxious weeds. See RCW 17.10.160 ("...employee of the county noxious weed control board...may enter upon any property for the purpose of administering this chapter..."). Her inspection of Moon Creek, via canoe, conducted sometime between May 3, 2012 and June 12, 2012 does not constitute trespass. Further, Sorby is immune from liability for a state law tort claim. See RCW 17.10.134

ORDER - 12

("individual members or employees of a county noxious weed control board are personally immune from civil liability for damages arising from actions performed within the scope of their official duties or employment."). However, there may be a claim against the Weed Control Board for negligence. See RCW 17.10.160(3)("civil liability for negligence shall lie in any case in which entry and any of the activities connected therewith are not undertaken with reasonable care."). No claim of negligence has been asserted in this action, and Sorby is entitled to summary judgment on Plaintiff's claim of trespass based on statutory immunity.

**IV. Conclusion**

Plaintiffs' federal claim of a constitutional Taking without just compensation is not ripe. Plaintiffs admit they did not seek compensation in state court, and have not demonstrated that such compensation is unavailable. The Takings' claim is dismissed without prejudice.

Plaintiffs' claim for violation of Due Process is ripe. There is a question of fact as to whether the Plaintiffs received the letters allegedly sent by Sorby in May and June of 2012. It is undisputed that the notice sent did not comply with the requirements of RCW 17.10.170, and the court finds such compliance was required.

The court further finds that the evidence in the summary judgment record establishes, as a matter of law, that Sorby, a state actor, and DLIA were acting jointly such that DLIA's actions in regard to the 2012 herbicide application constitute state action.

Lastly, the court finds that Sorby is personally immune from liability on Plaintiffs' state law trespass claim.

**IT IS HEREBY ORDERED**:

1. Defendant Sorby's Motion for Summary Judgment (ECF No. 175) is **GRANTED IN PART and DENIED IN PART** as set forth herein.

2. Plaintiffs' Cross-Motion for Summary Judgment (ECF No. 180) is **GRANTED IN PART and DENIED IN PART** as set forth herein.

ORDER - 13

1        3.  Discovery in this matter has been bifurcated.  The Scheduling Order (ECF No.

2    100) states: "After the resolution of the dispositive motions, the court will hold, if

3    necessary, a second scheduling conference to set a schedule for discovery on damages and

4    set pretrial and trial dates."  As dispositive motions have now been resolved, **IT IS**

5    **FURTHER ORDERED THAT**:

6        4.  Counsel shall submit a **<u>Joint</u>** Status Report setting forth the parties' positions:

7    1) on the amount of time necessary for additional discovery; 2) whether the parties intend

8    to engage in mediation and the time necessary for such; and 3) suggested pretrial and trial

9    dates.  The Joint Status Report shall be filed **no later than June 2, 2015.**

10       5.  The court will conduct a telephonic scheduling conference on **Thursday, June**

11   **11, 2015, at 2:00 p.m.**  Counsel shall call the court's toll-free conference line at 1-877-

12   336-1839; Access code: 9492285; Security Code: 0396.  Counsel should begin the call-in

13   process five minutes prior to the time set to ensure their timely addition to the call.

14       **IT IS SO ORDERED**.  The Clerk shall enter this Order and furnish copies to

15   counsel.

16       Dated this 13th day of May, 2015.

17                     s/ Justin L. Quackenbush
                   JUSTIN L. QUACKENBUSH

18               SENIOR UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28   ORDER - 14