UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| FRIENDS OF MOON CREEK, an unincorporated association, Cheryl and Robert Balentine, George A. and Jane Doe Tyler; Douglas M. and Jane Doe Anderson; Tom and Michele Bowyer Joe F. and Jane Doe Struther; Mark and Jane Doe Moeser; Gaylan and Jane Doe Warren, and Michael and Jane Doe Jeffrey,<br><br>Plaintiffs,<br><br>vs.<br><br>DIAMOND LAKE IMPROVEMENT, ASSOCIATION, INC., PHIL ANDERSON, Director Department of Fish & Wildlife, SHARON SORBY, Coordinator Pend Oreille County Noxious Weed Control Board,<br><br>Defendants/Cross-/Counter-Claimants. | No. 2:13-CV-0396-JLQ<br><br>ORDER RE: MOTION TO SET ASIDE PRELIMINARY INJUNCTION |

BEFORE THE COURT is Defendant Diamond Lake Improvement Association's Motion to Set Aside Preliminary Injunction (ECF No. 244). Response (ECF No. 251) and Reply (ECF No. 255) briefs were filed and the Motion was submitted without oral argument. Movant originally requested oral argument, but withdrew the request in its Reply brief (ECF No. 255, p. 2). Plaintiffs did not request oral argument, and the court deems the Motion appropriate for submission without argument. Local Rule 7.1(h)(3)(B)(iv).

**I. Introduction and Procedural History**

This action was commenced with the filing of a Complaint for Declaratory and Injunctive Relief on November 21, 2013. The parties engaged in extensive motion practice, the Complaint was twice amended, and cross and counter claims were filed. The

ORDER - 1

court heard oral argument on the Motion for Preliminary Injunction and three Motions to Dismiss on January 23, 2014. On February 27, 2014, the court issued an Order denying the Motions to Dismiss. (ECF No. 71). On March 27, 2014, the court issued an Order Granting in Part and Denying in Part (ECF No. 80) Plaintiff's Motion for Preliminary Injunction. The Motion was granted as to only Defendant Diamond Lake Improvement Association ("DLIA") and prohibited DLIA from "entering on to the real property of Plaintiff's members" and taking action pursuant to "the still active HPA [Hydraulic Project Approval] # 127229-03." (ECF No. 80, p. 11).

Thereafter, several more motions were presented to this court, including dispositive motions. On February 5, 2015, the court denied Defendant Anderson's, Director of the Washington Department of Fish & Wildlife, Motion for Summary Judgment and also denied Plaintiffs' Cross-Motion for Summary Judgment. (ECF No. 172). On May 13, 2015, the court denied DLIA's Motion to Dismiss for Lack of Jurisdiction. (ECF No. 205). In a separate Order of May 13, 2015, the court granted in part and denied in part Defendant Sorby's Motion for Summary Judgment and Plaintiffs' Motion for Summary Judgment. (ECF No. 206).

Shortly thereafter, on May 19, 2015, Plaintiffs filed a "Complaint for Damages and for Injunctive Relief" in the Superior Court of Pend Oreille County. (Filed herein at ECF No. 214). Defendants then filed a Joint Motion to Stay this action. (ECF No. 213). On August 17, 2015, this court issued an Order granting the Motion to Stay. (ECF No. 216). Defendants contended a stay was in the interests of judicial economy because the state Complaint involved additional claims and sought additional relief and therefore the resolution of this federal action would not resolve all claims presented in the state action. In granting the stay, this court observed: "The primary claim at issue in this case is a state law trespass claim against a private homeowner's association, DLIA." (ECF No. 216, p. 3). The court also recognized the interest in judicial economy of having all claims resolved in the state court. The court further observed much discovery and motion

ORDER - 2

practice had already taken place and "it would appear the parties are in a position to request an expedited trial setting in state court." (*Id.*). The parties represented to this court they should be able to conclude discovery in three to four months. Unfortunately, the interests of judicial economy do not appear to have been served in this matter, as the dispute is now over four years old and has yet to proceed to trial.

### A. The State Court Litigation

The parties have filed several status reports informing the court's understanding of the pendency of the state litigation. The parties scheduled a mediation for February 2016, but the mediation was unsuccessful. (ECF No. 224 & 226). The parties then filed dispositive motions in state court and trial was scheduled for May 2, 2017. (ECF No. 227). The parties report the claims against Defendant Anderson were dismissed on summary judgment, and Defendant Sorby's Motion for Summary Judgment based on qualified immunity was denied. (ECF No. 226 & 235). An order certifying the question of qualified immunity to the Washington Court of Appeals was entered, and the court heard oral argument on September 8, 2017. As a result of the certification, the state trial court struck the May 2, 2017, trial date.

Defendant DLIA also moved for summary judgment, which was granted in part. DLIA reports it obtained summary judgment on all claims except for a procedural Due Process claim. (ECF No. 244). DLIA obtained a favorable ruling on Plaintiffs' trespass claim. DLIA reports the trial court denied Plaintiffs' Motion to Reconsider and request for certification of discretionary review. Plaintiffs' recent filings confirm the state trial court dismissed Plaintiffs' trespass claims and denied the request for discretionary review. (ECF No. 251, p. 5).

### II. Discussion

DLIA moves for relief from the Preliminary Injunction entered on March 27, 2014, and argues Plaintiffs can no longer demonstrate a likelihood of success on the merits of their trespass claims, because the claims have been adjudicated against them in state

ORDER - 3

court. Plaintiffs argue the state trial court ruling on the trespass claim was erroneous because "the trial court found that substantial damages are now a necessary element of any simple common law trespass claim." (ECF No. 251, p. 2).

A plaintiff seeking preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 21 (2008). A preliminary injunction is an "extraordinary remedy" not awarded as of right. *Id.* at 23. In *Winter*, the Supreme Court rejected the Ninth Circuit's approach which had allowed for an injunction to be entered on the "possibility" of irreparable harm, and stated such harm must be "likely". As an alternative to demonstrating a likelihood of success on the merits, a movant for a preliminary injunction may establish "serious questions going to the merits, and that the balance of the hardships tips sharply in its favor." *Soda Mountain Wilderness Council v. Bureau of Land Management*, 534 Fed.Appx. 680, 683 (9th Cir. 2013); see also *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011). The grant of a preliminary injunction is an exercise of judicial discretion. *Sierra On-Line v. Phoenix Software*, 739 F.2d 1415, 1421 (9th Cir. 1984). A preliminary injunction "is not a preliminary adjudication on the merits but rather a device for preserving the status quo and preventing the irreparable loss of rights before judgment." *Id.* at 1422.

After this court heard the Motion for Preliminary Injunction, it determined Plaintiffs had demonstrated a likelihood of success on the merits of the trespass claim. Plaintiffs had presented Declarations supporting the claim. These Declarations included: Cheryl Ballentine submitting she suffered a headache from the herbicide spray (ECF No. 4); Gaylen Warren stated the airboat driver threatened/attempted to run him over (ECF No. 6); Mark Moeser stated the beaver pond on his property was destroyed by the Defendants' activity which dramatically decreased his property value. (ECF No. 7); and

ORDER - 4

Doug Anderson who operates SpruceWood Farms from his 5 acre parcel and sells plants, trees, and shrubs, which he contended were contaminated by the herbicide application. (ECF No. 8). Additionally, Joe Struthers stated he told DLIA they could not use his property as an access point to the beaver dams and called local police about the trespass, but they refused to act. (ECF No. 10). The court found these Declarations, and others, established a likelihood of success on the merits on the trespass claim.

This court also noted: "It is well-established that the loss of an interest in real property constitutes an irreparable injury." *Park Village Tenants Ass'n v. Mortimer Howard Trust,* 636 F.3d 1150, 1159 (9th Cir. 2011). This court looked at the balance of the equities and found that although both DLIA and Plaintiffs sought to protect and preserve their respective real property, the equities were in favor of Plaintiffs who alleged their property had been physically invaded by Defendants. The court issued the injunction against only DLIA, and not against Defendant Anderson or Defendant Sorby. The Order stated, in relevant part:

> Defendant DLIA is hereby prohibited from entering on to the real property of Plaintiff's members as described further in paragraph (4) below, and is further prohibited from taking further action involving Plaintiffs' property pursuant to the still active HPA # 127229-03. Any action pursuant to an HPA that could involve Plaintiff's property shall be taken only after 20 days prior written notice to Plaintiff's members listed in paragraph (4) or upon receiving express written permission from such members, or with the consent of the court.

DLIA now seeks relief from the Order, or in the alternative, that the court require the posting of a $1,000,000.00 bond, to cover damages in the event of flooding on DLIA's members properties.

When the Motion to Stay was originally argued, both sides made an argument focused on judicial economy and were concerned about the prospect of piecemeal litigation. However, it appears what the parties sought to avoid has occurred. The parties are litigating the instant Motion in federal court, while a few remaining claims are

ORDER - 5

proceeding to trial in state court, and while yet another issue (qualified immunity) is pending before the Washington Court of Appeals.

The four factor preliminary injunction test now weighs in favor of dissolving the injunction. Although Plaintiffs retain the possibility of ultimately prevailing on the trespass claim, given the adverse ruling by the state trial court, they have not established a likelihood of success. As to the second factor, whether Plaintiffs have established they are likely to suffer irreparable harm, this court originally found loss of an interest in real property and environmental injury constitutes irreparable injury. (ECF No. 80, p. 6). In question was whether such future injury was likely to occur. Here, DLIA's Motion indicates that future activity concerning the "drainage ditch" and beaver dams, and potential injury, is likely to occur. DLIA states it has not maintained the "drainage ditch" for years because of this litigation, and the injunction. (ECF No. 244, p. 6). DLIA contends as a result "lake levels have again risen to perilous levels". (*Id.*). DLIA contends the beaver tube must be maintained "at least every three months," and yet presumably it has not been maintained for over three years and flooding has not resulted. (*Id.* at p. 4). Although both Plaintiffs and DLIA allege damage to their real property may result in future, this factor still tips in favor of Plaintiffs as DLIA proposes to clear the "drainage ditch", remove beaver dams, and spray or request spraying of herbicide. (ECF No. 244, p. 17). These are the very actions which precipitated this lawsuit, and which Plaintiffs allege constituted trespass.

Concerning the third factor, the balance of the equities, the court originally recognized the property interests of DLIA and Plaintiffs, and they both argued they were acting in the interest of the their own real property. The court found the interests tipped in favor of Plaintiffs "whose members alleged their real property was physically invaded." (ECF No. 80, p. 8). This court's analysis remains the same, although consideration of the state court ruling on the trespass claims weakens the strength of Plaintiffs' allegations. On the fourth factor, the public interest, the court originally found

ORDER - 6

valid public interest concerns on both sides, and maintains that conclusion.

**III. Conclusion**

The court finds Plaintiffs can no longer establish a likelihood of success on the merits of the state trespass claim, because the trespass claim was been adjudicated against Plaintiffs in state court. While it is true Plaintiffs have not yet had the opportunity to appeal the summary judgment ruling, and Plaintiffs could ultimately prevail on appeal, and then prevail at trial on remand, this court does not find the likelihood of success established. This court expresses no opinion on the merits of the state trial court's ruling on the trespass claims. The state court considered the merits of a state law trespass claim on a presumably more fulsome summary judgment record than the record presented on the preliminary injunction motion and determined the claim against Plaintiffs. The court will dissolve the preliminary injunction Order (ECF No. 80), which has been in effect for over three years.

The lifting of the injunction does not affirmatively allow for DLIA members to trespass on Plaintiffs' members property. Additionally, the court observes the Hydraulic Project Approvals ("HPA") which were before the court at the time of the hearing on the Motion for Preliminary Injunction have now expired. The HPAs are found in the record and HPA # 127229-1 expired on June 6, 2017. (ECF No. 4-9). Patrick Chapman, an employee of the Department of Fish and Wildlife, filed a Declaration which addressed the status of five HPAs which had been issued to DLIA. He stated two had been "superseded" and two had "expired". (ECF No. 39-1, ¶ 2(b)). He listed HPA 127229-03 as "active" as of December 18, 2013. HPA 127229-3 was attached as an exhibit and states an expiration date of June 5, 2017. (ECF No. 39-1, p. 6).

The HPAs which purported to authorize the dredging activities and installation of beaver dam tubes have expired, and the court dissolving the injunction does not authorize such activities on Plaintiffs' members properties. The parties are encouraged to work cooperatively in addressing these matters of dispute concerning lake level, weeds in the

ORDER - 7

creek, beaver dams, etc., and attempt to bring an end to this long-running dispute. As early as its Order of May 7, 2014, this court observed the parties were taking "overly litigious postures", and further observed "the parties appear poised to expend great time and expense on this litigation". (ECF No. 101, p. 3-4). The court reminded the parties of "the familiar axiom that a bad settlement is almost always better than a good trial." (*Id.* at p. 4). Despite the court's admonition, the parties have continued to litigate this matter for an additional forty-three months, and after litigation in the state trial court, state appellate court, and this court, some claims remain unresolved.

**IT IS HEREBY ORDERED**:

1. Defendant DLIA's Motion to Set Aside Preliminary Injunction (ECF No. 244) is **GRANTED IN PART**. The court's Preliminary Injunction (ECF No. 80) is dissolved **effective January 12, 2018**. However, removing the injunction does not, as set forth below, grant DLIA all the relief sought in the Motion to Set Aside.

2. This Order does not affirmatively allow DLIA to undertake action to clear the Diamond Lake "drainage ditch", access and maintain beaver tubes, remove beaver dams, or to apply herbicide in the ditch. Any such action, if taken, must comply with all applicable federal, state, and local laws. Any such action, if taken, should only be taken after providing appropriate notice to potentially affected nearby property owners. The court encourages DLIA and Plaintiffs to work cooperatively in addressing these issues. In the event the parties cannot reach some agreement, the parties may choose to address this issue with the state court, as the federal action is currently stayed. (See Order at ECF No. 216).

**IT IS SO ORDERED**. The Clerk shall enter this Order and furnish copies to counsel.

Dated this 28th day of December, 2017.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 8